Opinion issued February 9, 2006










     





In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01207-CR




JOHN CHARLES MENARD, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 178th District Court
Harris County, Texas
Trial Court Cause No. 972652




O P I N I O N
          A jury found appellant, John Charles Menard, guilty of aggravated robbery.


 
After finding two enhancement paragraphs true, the jury assessed punishment at
thirty-six years’ confinement. Menard contends the trial court abused its discretion
in failing to excuse a juror during deliberations, depriving him of his (1) Fifth and
Fourteenth Amendment rights to due process; (2) Sixth Amendment right to a trial by
a fair and impartial jury; and (3) Texas constitutional rights to a fair and impartial jury
and to due course of law. We hold that the issue is waived because Menard did not
object to the service of the juror at the time the conduct about which he complains
arose and he became aware of it; nor did he request a mistrial or file a motion for new
trial. We therefore affirm.
Facts
          In November 2003, Bridget Martin worked as a retail clerk at a Mrs. Baird’s
Bakery located on North Shepherd in Houston, Texas. In the late afternoon, a young
man and young woman entered the store and approached Martin. The man pointed
a handgun in Martin’s direction and ordered her to open the cash register. Martin
complied and informed the man when the cash register was open. He then led Martin
to the restroom where he told her to wait ten minutes before coming out. Upon later
inspection, Martin determined that $65 was missing from the cash register. Martin
identified Menard as the man who robbed her, both during a photo spread and while
in court.
 
Relevant Proceedings
After the jury found Menard guilty, but before the beginning of the
presentation of evidence at the punishment phase of trial, the trial court inquired
outside the presence of the jury whether Menard would be pleading true or not true
to the punishment enhancement paragraphs and whether his stipulation of evidence
was voluntarily made. Menard stated that he would plead true to the enhancements
and would stipulate to the prior convictions. Menard’s counsel then informed the
court that Menard believed that a juror had been sleeping during the guilt/innocence
testimony and requested “[i]f we could, after the deliberations, bring him out, ask [the
juror] about that.” (Emphasis added.) 
The trial court then brought the jury into the courtroom for the punishment
phase of trial. Menard pleaded true to the enhancement paragraphs, the State
introduced the stipulated evidence regarding his prior convictions, and the State
rested. Menard testified on his own behalf as the sole defense witness. The court
read the punishment charge to the jury, the attorneys each made closing arguments,
and the jury again retired to deliberate. During their punishment deliberations, the
jury requested a copy of the trial court’s charge. 
While the jury deliberated during the punishment phase of trial, Menard’s
counsel stated as follows: 
During the punishment stage, Mr. Menard indicated to me that the
juror in the corner, the older black gentleman, was sleeping. I noticed
that myself. I asked Deputy Wheeler to keep an eye on him, and I
noticed Deputy Wheeler was [watching him] the entire time that we
were presenting evidence and during the argument. I’d like to present
Deputy Wheeler’s testimony in that regard for the record to -- you know,
to develop a possible point of appeal, that this individual did not listen
to the evidence, at least during the punishment phase of the trial, and
then, perhaps, after the verdict bring him out and question him with
regard to what he heard during the guilt/innocence stage. Because the
indication from Mr. Menard is that that same individual was sleeping
during the guilt/innocence phase.
 
Menard’s counsel then called Deputy Wheeler, the Harris County Sheriff’s
Deputy assigned as the bailiff during the punishment phase of Menard’s trial. The
deputy testified that when the State’s attorney began her cross-examination of Menard
during the punishment phase, Menard’s trial counsel asked the deputy to watch the
black gentleman in the far corner of the jury box. The deputy then watched the
gentleman and noted as follows:
During Miss Kolski’s cross-examination for four periods of eight
seconds, two periods of ten seconds, one period of twelve seconds, and
one period of thirteen seconds, that gentleman had his eyes closed. 
During that period when his eyes were opened, he rubbed them
constantly and he was blinking frequently when he was -- appeared to
be alert. Then during the reading of the charge by the Court, on two
occasions his eyes were closed for six seconds, on four occasions, they
were closed for twelve seconds. He was, once again, rubbing his eyes. 
And on three occasions, when his eyes were closed, he was visible [sic]
nodding off. In other words, his chin was dropping. Then during Miss
Kolski’s closing argument, there was one period of eight seconds when
he had his chin in his hand and he was visibly nodding off, and there
were two instances of ten seconds when his eyes were closed. During
your closing argument, there was one period of 12 seconds when his
eyes were closed -- were closed rather, two periods of eight seconds
when his chin was in his hand and he was nodding off, two periods of
eight seconds when his eyes were merely closed, two periods of 10
seconds when he was with his eyes closed and nodding off, and one
period of thirteen seconds when his chin was in his hand and he was
nodding off. 
 
The attorneys then each made statements to the court regarding their
observations about the juror. The State’s attorney represented that she had never seen
“this juror sleeping” and that every time that she looked at the jury “the entire jury
looked alert and awake.” The State’s attorney stated that she did not see any of the
things that Deputy Wheeler had described. Menard’s trial attorney stated that he
could not “state specifically on the record as to the times that Deputy Wheeler has
logged on the record, but I can state emphatically that I saw this juror with his eyes
closed on more than one occasion.” Later in the discussion, Menard’s trial attorney
stated further that “I can say during my argument, and it might just be my effect on
him, he was nodding off.” 
Menard’s attorney requested that the trial court question the juror. In response,
the trial court inquired if the attorneys wanted to agree to excuse the juror. Menard’s
trial attorney indicated that excusal of the juror would not necessarily be a
satisfactory remedy if the juror had not “heard enough during the guilt/innocence
stage that he participated with some degree of intellect during that process.”


 The
trial court then removed the juror from the punishment deliberations and questioned
the juror as follows:
THE COURT:       Mr. Washington--
JUROR:                 Yes, sir.
THE COURT:       --there are some people who are of the
opinion that they felt like you might have
been dozing a little bit.
 
JUROR:                 I did doze a couple of times. I did, but I was
really apparent of what was going on.
THE COURT:       Even though you dozed a few times, you felt
like you were still able to hear what the
evidence was coming from the witness stand
at the time?
JUROR:                 Yes, sir.
. . . .
THE COURT:       Well, do you think that it in the least bit
impaired your ability to render a fair verdict
in this trial?
 
JUROR:                No, sir.
THE COURT:       Do you think it will impair your ability at all
to render a fair verdict at the punishment
phase of trial?
JUROR:                No, to be very honest.       
          The trial court sent the juror back to the jury room to continue deliberations. 
After a short period, defense counsel told the trial court that he had consulted with his
client and that they wanted to excuse the juror “by agreement.” The trial court asked
the State’s attorney if she wished to excuse the juror by agreement and she said no. 
The trial court then stated, “Your motion to excuse the juror is denied.” Menard’s
counsel did not move for a mistrial or move for a new trial. 
Discussion
Menard contends the trial court abused its discretion in refusing to excuse the
juror during the punishment phase of the trial, thereby depriving him of his (1) Fifth
Amendment right to due process; (2) Sixth Amendment right to a trial by a fair and
impartial jury; (3) Fourteenth Amendment right to due process; (4) Texas
Constitution Article One, Section Ten, right to a fair and impartial jury; (5) Texas
Constitution Article One, Section Thirteen, right to due course of law; and (6) Texas
Constitution Article One, Section Nineteen, right to due course of law.
A.      Preservation of Error
          To preserve an issue for appeal, a party must timely object, stating the specific
legal basis. Tex. R. App. P. 33.1(a)(1); Rhoades v. State, 934 S.W.2d 113, 121, 127
(Tex. Crim. App. 1996). “To be timely, an objection must be raised at the earliest
opportunity or as soon as the ground of objection becomes apparent.” Penry v. State,
903 S.W.2d 715, 763 (Tex. Crim. App. 1995). In the absence of a timely motion or
objection, nothing is presented for appellate review. Cooper v. State, 500 S.W.2d
837, 841 (Tex. Crim. App. 1973). In order to properly preserve an error regarding
jury misconduct, a defendant must move for a mistrial or a new trial. See Thieleman
v. State, No. 1743-04, 2005 WL 3408044, at *1–3 (Tex. Crim. App. Dec. 14, 2005)
(noting that appellant raised point of error by asserting that trial court erred in
refusing to grant motion for mistrial where uncontroverted evidence was that juror
slept continuously throughout trial); Trout v. State, 702 S.W.2d 618, 620 (Tex. Crim.
App. 1985) (“A motion for new trial is the proper course to be taken in preserving
alleged jury misconduct error for appeal.”); Matthews v. State, 803 S.W.2d 347, 350
(Tex. App.—Houston [14th Dist.] 1990, no pet.) (same).
 
 
B.      The Record in This Case
          The record shows that Menard’s trial attorney stated that he had observed the
juror with his eyes closed on more than one occasion and that the juror was “nodding
off” during his closing argument. Menard’s trial attorney, however, never brought
the matter to the trial court’s attention at the time that the events were transpiring. 
Menard asked the trial court to question the juror during the punishment phase jury
deliberations to determine whether the juror had been attentive during the punishment
phase of trial and requested that the juror be excused “by agreement.” When the trial
court denied the request, however, Menard’s trial attorney did not object to the
service of the juror or request that the trial court remove the juror. He thus did not
timely present his objection for a trial court ruling. Moreover, Menard never
requested a mistrial, nor did he file a motion for new trial. We hold that Menard’s
complaints about the alleged sleeping juror are waived because he did not object to
the juror’s participation in the trial when the grounds for objection became apparent
at trial—nor did he move for a mistrial or pursue any claim of juror misconduct post-trial. See Thieleman, 2005 WL 3408044, at *1–3 (holding that appellant preserved
error as to complaint of sleeping juror by counsel noting fact that juror slept and
moving for mistrial); Penry, 903 S.W.2d at 715.
          Even assuming that Menard preserved error by counsel’s request to excuse the
juror “by agreement,” we do not find that the trial court abused its discretion in
denying the request, based upon this record. 
          If sleep by a juror makes it impossible for that juror to perform his
or her duties or would otherwise deny the defendant a fair trial, the
sleeping juror should be removed from the jury. However, a court is not
invariably required to remove sleeping jurors, and a court has
considerable discretion in deciding how to handle a sleeping juror.
 
United States v. Freitag, 230 F.3d 1019, 1023 (7th Cir. 2000) (citations omitted). The
trial court should consider whether “the sleeping juror missed large portions of the
trial or [whether] the portions missed were particularly critical.” Id. (finding no abuse
of discretion in refusing to excuse juror whom trial judge, Assistant United States
Attorney, and defense counsel noticed sleeping on at least two occasions, because
there was no evidence that juror missed large portions of trial or that portions missed
were particularly critical, and because defense counsel failed to raise issue when he
first noticed juror sleeping).
          Here, although the juror admitted to “dozing a couple of times,” he confirmed
to the trial court that he heard the evidence, “was really apparent of what was going
on,” and was able to render a fair verdict. The trial judge, as trier of fact, was free to
believe the juror’s representations on this point. See Zamora v. State, 647 S.W.2d 90,
94 (Tex. App.—San Antonio 1983, no pet.) (holding that trial court was free to
believe juror’s testimony that he did not fall asleep and to disbelieve testimony of six
other witnesses that juror did fall asleep during crucial testimony). Furthermore, the
record does not indicate that the juror missed large portions of the trial—rather,
Deputy Wheeler indicated that the juror sporadically closed his eyes for periods of six
to thirteen seconds. See Freitag, 230 F.3d at 1023. Accordingly, even had Menard
properly preserved this issue for appeal, we find no abuse of discretion by the trial
court.



 
 
 
Conclusion
          We hold that Menard did not properly preserve his jury misconduct issue for
appeal because he neither timely objected at the trial, nor moved for a mistrial, nor
moved for a new trial. We therefore affirm the judgment of the trial court.



                                                            Jane Bland
                                                            Justice

Panel consists of Chief Justice Radack and Justices Alcala and Bland.
Publish. Tex. R. App. P. 47.2(b).